[No 1243. Decided January 10, 1895.]

*In the matter of the Estate of Daniel J. Harris, deceased:* BENJAMIN F. HARRIS, *Respondent, v.* EDWIN A. HARRIS ET AL., *Appellants.*

WILLS—PROBATE OF LOST WILL—PLEADING—EVIDENCE.

An allegation in a petition to establish and prove a lost will stating that "said deceased, at the time of his death, left a will which your petitioner alleges to be the last will and testament of said deceased," is equivalent to alleging that the will was in existence at the time of the death of the testator, as required by Code Proc., § 879, in such cases.

In a proceeding to establish a lost will, its execution is sufficiently proved in the absence of any contradictory testimony, when one of the attesting witnesses testifies that he saw the testator and the other attesting witness, who had since died, sign an instrument which the former declared to be his will.

The presumption of revocation of a will arising from its loss or disappearance prior to the testator's death, is overcome, when there is no direct proof of revocation, by testimony showing that he had left it with a certain custodian and never thereafter had had it in his own possession ; and that, a short time prior to his death in California, he had stated that he had a will, that it was recorded up north (in Washington), and that he left his property up north to his nephew.

Under Code Proc., § 879, the provisions of a lost will must be proved by not less than two credible witnesses, and the declarations of the testator are inadmissible for that purpose.

*Appeal from Superior Court, Whatcom County.*

*Kerr & McCord,* for appellants.

*Bruce, Brown & Cleveland,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This was a proceeding instituted by the respondent, in the superior court of Whatcom county, to establish and probate a lost will. The material allegations of the petition, briefly stated, are: That Daniel J. Harris died at Los Angeles, in the State of California, on or about August 19, 1890, leaving an estate in the city of Fairhaven, Washington, consisting of certain town lots which are specifically described; that "said deceased, at the time of his death, left a will bearing date the 6th day of April, 1871, which your petitioner alleges to be the last will and testament of said deceased"; that said will is in writing and was signed by the deceased and attested by two witnesses who, at his request, subscribed their names to the said will in the presence of said testator, and of each other; that the original will has been lost and cannot be found, and that a copy thereof is annexed to the petition and presented in lieu of said original will; that the petitioner, Benjamin F. Harris, is named in said instrument as the sole devisee under said will, and that the property described in the petition as that left by the said testator at the time of his death, was a part of Donation Claim No. 420, described in said will. The next of kin and heirs at law of the deceased interposed a demurrer to the petition, on the ground that the same did not state facts sufficient to constitute a cause of action. This demurrer was overruled by the court and exception taken and allowed. An answer was thereupon filed, denying each and every allegation of the petition, except that the parties named therein are the next of kin and heirs of the said Daniel J. Harris, and that the property belonging to the said testator is properly set forth and described in the petition. The cause was tried by a special judge, and the

court, after hearing the testimony, filed its findings of fact and conclusions of law, and entered a decree establishing the will and admitting it to probate. From this judgment the contestants appealed to this court.

Our statute (Code of Procedure, § 879) provides that:

"Whenever any will be lost or destroyed, by accident or design, the superior court shall have power to take proof of the execution and validity of the will, and to establish the same, notice to persons interested having first been given; such proof shall be reduced to writing, and signed by the witnesses. But no will shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses."

The appellant's first contention is that the court erred in overruling their demurrer to the petition. The point here made is that it does not allege that the will was in existence at the time of the death of the testator, or that it was fraudulently destroyed in his lifetime, and that therefore no proof was admissible to sustain the finding of the court that the will was in existence at the testator's death. A fraudulent destruction of the alleged will is not claimed by the respondent, and it was therefore not necessary to allege such destruction. But it was necessary, in order to establish the instrument as a *lost* will, to aver in the petition that it was in existence at the time of the death of the testator (*Estate of Kidder*, 57 Cal. 282); and this, we think, the petitioner substantially did when he alleged that "said deceased, at the time of his death, left a will which your petitioner alleges to be the last will and testament of said deceased." Saying that the deceased "left a will" when he died was equivalent to saying that the will was in existence at that time. The objection to the sufficiency of the petition is, therefore, not well founded.

But it is insisted by appellants that, even though the petition may be deemed sufficient, the judgment must be re-

versed for the reasons, (1) that the proposed will was not shown to have been executed in compliance with the statute; (2) that, if properly executed, it was not proved that the will was in existence at the time of the death of the testator; and (3) that its provisions were not clearly and distinctly proved by at least two credible witnesses as required by law.

The statute concerning the execution of wills (Gen. Stat., § 1459) declares that:

"Every will shall be in writing, signed by the testator or testatrix, or by some other person under his or her direction in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator."

As to how wills shall be proved, under circumstances like those in the present case, the statutory provision is as follows:

"When one of the witnesses to such will shall be examined, and the other witnesses are dead   *   *   *   then such proof shall be taken of the handwriting of the testator, and of the witnesses dead   *   *   *   and of such other circumstances as would be sufficient to prove such will." (Code Proc., § 865).

It seems reasonably certain from the evidence in the record that Daniel J. Harris made a will on or about the time alleged in the petition, and that it was in writing and was signed by him and attested by Henry Roeder and J. O. Turner, who subscribed their names to the will in the presence of said testator, and at his request. The witness Turner died prior to the time of the presentation of the will for probate, but Mr. Roeder testified that Harris requested him and Turner to witness an instrument, which he declared was a will; that the transaction occurred at the court house, in the office of Turner, who was then county auditor and clerk of the probate court; that he saw Harris sign the instrument, and that he and Turner both signed it as witnesses, in the presence of said Harris and of each other. Inasmuch as our statutes makes no special provision as to proving lost wills, it is fair to presume that the legislature intended by

the general language used in the section of the statute above quoted, that the execution of all wills should be proved in the manner therein specified, without regard to whether they are actually before the court when the proof is offered or not.    At all events, we must conclude that it was not the legislative intention to permit wills alleged to be lost to be proved by evidence less cogent and satisfactory than that required to establish the validity of such instruments when they are in the presence of the court and subject to inspection and examination.    But we think the requirements of the statute were substantially complied with in this instance. When the witness Roeder saw Daniel J. Harris and the attesting witness Turner sign an instrument which the former declared to be his will, and which, in the absence of countervailing testimony, may be deemed to be such will, he necessarily saw and knew the handwriting of the testator and of the "witness dead."    And this, with the attendant circumstances, was sufficient to establish the fact that the said Harris made a will at that time.

It is claimed by the respondent that this will was immediately after its execution recorded in the office of the probate judge of the county, in conformity to the practice then prevailing; and the fact appears to be that the copy of the will proposed for probate was taken from the records in that office and that this record is in the hand-writing of Turner, one of the witnesses who signed the will, that Roeder also signed as a witness, and which purports to have been made April 6, 1871, the date of the will.

There is no evidence whatever in the record tending to show that the decedent ever made any other will than that witnessed by Roeder, and it is not here claimed by any one that he did.

Was that will proved to have been in existence at the time of the death of the testator?    It is insisted by the learned counsel for the respondent that the evidence abundantly and clearly shows that it was, and fully justifies the finding of the court on that proposition.    The language of the statute, as we have seen, is that "no will shall be allowed to be

proved as a lost  *  *  *  will unless the same shall be proved to have been in existence at the time of the death of the testator," etc.  And it would seem that this language implies that the burden of proving the existence of a lost will, at the time of the testator's death, rests primarily upon him who offers such a will for probate.  Of course, affirmative testimony is not absolutely necessary in order to establish that fact.  Like other facts, it may be properly shown by circumstantial evidence.  *Schultz v. Schultz*, 35 N. Y. 653 (91 Am. Dec. 88).

In this case it was shown by the respondent that the will sought to be proved could not be found after the testator's death ; in other words that it had been lost.  He did not claim or attempt to prove that it was fraudulently destroyed in the lifetime of the testator.  But he asserts that the facts and circumstances in the case conclusively show that the will was in existence when the testator died, and that there is nothing in the evidence from which a contrary conclusion can be legitimately drawn.

There is no direct evidence that the will was ever revoked by the testator, but the appellants contend that the fact that it could not be found after his death raised a strong presumption that it was destroyed by him with the intention to revoke it, and that that presumption was not overcome, in this instance, by adequate proof.

That the law presumes that a will proved to have been in existence and not found at the death of the testator was destroyed by him *animo revocandi*, is not disputed by counsel for the respondent, but it is insisted that the evidence dis-' closes the fact that this particular will was not revoked by the testator, and that the contrary presumption arising from a failure to find it was fairly rebutted.  This presumption of revocation cannot be invoked, or rather, is overcome and rebutted, where it appears that the testator, after the execution of the will, deposited it with a custodian and did not thereafter have it in his possession, or have access to it. *Schultz v. Schultz, supra*.  And it is claimed, and the trial judge found, that this will was deposited with the county

auditor for safe keeping. There is but little, if any, testimony to that effect, but the testator did say to certain witnesses, in California, that he had a will "up north," meaning in Washington, and that he had it recorded so that in case he should lose it the will would be of record there and there would be no dispute about it. He made these statements, in effect, many times during the last year or two of his life, and, about two weeks before he died, he stated to his nurse that he had a will, that it was recorded up north, and that he left his property up north to his nephew.

Now, if it be true that the testator left his will in this state when he went to California in 1888 or 1889, and that, as he said, it was still here two weeks prior to his death, it is reasonably certain that it was not destroyed by him, whether it was left in the custody of the auditor or not. We are, therefore, in view of all the evidence, unwilling to disturb the finding of the court that the will was in existence and unrevoked at the testator's death. But we are constrained to reverse the judgment upon another ground, namely, that the provisions of the will were not proved as required by law.

Were it not for the express provisions of our own statute we would have but little difficulty in sustaining the conclusion reached by the trial court upon the point now under consideration, upon eminently respectable authority. It has been held, in the absence of a controlling statute, that in cases like the present the declarations of the testator are admissible as proof of the contents of the will. Beach, Wills, § 73 ; *Sugden v. Lord St. Leonards*, L. R. 1 Prob. Div. 154.

But the legislature of this state has said that no will shall be allowed to be proved as a lost will unless its provisions shall be clearly and distinctly proved by at least two credible witnesses. This language is mandatory and cannot be disregarded by the courts. There is but one witness in this case who, according to the evidence, ever saw the will sought to be proven, and that is Mr. Roeder ; and he says he never saw it after he signed it as a witness, and did not read it at that time. He further states that he had no knowledge of

36–10 W

the contents of the instrument which he signed, except what he subsequently learned from conversations with the decedent and from an examination of the recorded instrument. There is absolutely no proof of the provisions of the will except the declarations of the decedent, if we exclude the alleged record from our consideration, which we are obliged to do, if for no other reason, because it is not proved to be a correct copy. In New York the statute, which is otherwise like ours, provides that a correct copy of a will shall be equivalent to one witness, in proving its provisions. *Knapp v. Knapp*, 10 N. Y. 278. But here we have no such provision, and even a copy proved to be correct would not take the place of a credible witness. The term "witness," as used in the statute, evidently means a person who is sworn and testifies in a cause, and not a document or paper merely.

There is no merit in appellants' remaining objection, but for the error indicated the judgment must be reversed; and it is so ordered.

DUNBAR, C. J., and HOYT and STILES, JJ., concur.